UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CAROLYN IVIE, | ) |
| Defendant, | ) |
| vs. | ) No. 1:15-cv-01896-MPB-TWP |
| JACK IVIE, | ) |
| Defendant. | ) |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court conducted a bench trial in this action on December 13, 2017. Defendant, Carolyn Ivie, appeared in person and by counsel Jerry Lux. Defendant, Jack Ivie, appeared by counsel Randall Robert Shouse. The Court now provides its Findings of Fact and Conclusions of Law.

## PROCEDURAL BACKGROUND

Metropolitan Life Insurance Company ("MetLife") initiated this action by filing a Complaint in Interpleader on December 2, 2015. (Docket No. 1). At issue are the rival claims as to who the true designated beneficiary is regarding the life insurance policy of Decedent Roger Ivie. Specifically, MetLife asked the Court to litigate, settle and adjust the Defendants', Roger Ivie, Carolyn Ivie, and Freeman Family Funeral Home, claims and determine to whom Mr. Ivie's Navistar International Transportation Corporation Retiree Life Insurance Program ("the Plan") benefits, plus any applicable interest, should be paid. An Agreed Motion for Interpleader and Dismissal of MetLife from this action was filed on October 24, 2016. (Docket No. 27). The parties agreed that MetLife was merely a stakeholder and claimed no beneficial interest in the

life insurance benefits (other than attorney fees and costs of this matter) payable under the Plan. Accordingly, MetLife was permitted to tender to the Clerk of the Court the life insurance benefits payable under the Plan, plus interest and minus its attorney fees and costs reduced to the amount of $1,500.00. Plaintiff MetLife was **dismissed with prejudice** from this action on November 30, 2016 (Docket No. 33 at ECF p. 3), and on December 15, 2016, the Court received $8,537.88 into its Treasury Registry. (Docket No. 39). On July 10, 2017, the Court granted a joint motion authorizing disbursement in the amount of $3,833.83 to Freeman Family Funeral Home, which was thereby dismissed from this action. (Docket No. 54). Thereafter, only Carolyn Ivie and Jack Ivie's claims remained.

The parties consented to Magistrate Judge Matthew P. Brookman (Docket No. 55; Docket No. 56) and this bench trial followed. Following the trial, the parties filed proposed findings of fact and conclusions of law. (Docket No. 78, Docket No. 79). Being duly advised, the Court further finds that Jack Ivie failed to meet his burden and further finds that the Decedent was not unduly influenced when signing the 2014 Beneficiary Designation. The court now issues its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

The Court finds that it has subject-matter jurisdiction over this matter. The Plan Benefits that are the subject of the interpleader are governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"). Accordingly, the Court has subject-matter jurisdiction under 29 U.S.C. § 1132 and 28 U.S.C. § 1331. *See Life Ins. Co. of North Am. V. Camm,* 2007 WL 2316480, *2 (S.D. Ind. 2007) (two interpleader actions filed by life insurance company to determine who was entitled to life insurance benefits under plan

governed by ERISA were within federal court's federal question jurisdiction "because the disputes are over employee benefits subject to ERISA.").

## FINDINGS OF FACT

Roger Ivie, an employee of Navistar, Inc. ("Navistar"), was a participant in an ERISA-governed employee welfare benefit plan sponsored by Navistar, and funded by a group life insurance policy issued by MetLife. As the claim fiduciary, MetLife administers claims in accordance with ERISA and the documents and instruments governing the Plan.

The Plan establishes the right of a Plan participant to name his or her beneficiary. ERISA defines a beneficiary as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." [29 U.S.C. § 1002(8)](). At the time of his death, Mr. Ivie was enrolled under the Plan for Basic Life insurance coverage in the amount of $10,000.00 (the "Plan Benefits"). The Plan Benefits became payable upon Mr. Ivie's death. On October 19, 2009, Mr. Ivie designated his son, Jack Ivie ("Jack"), as the sole beneficiary of the Plan Benefits.

In May 2014, Mr. Ivie was diagnosed with stage IV lung cancer metastatic to the liver. On May 30, 2014, Mr. Ivie designated Jack his Power of Attorney.

On September 30, 2014, Mr. Ivie married Carolyn. Mr. Ivie began dating Carolyn in 2011, and had moved in to her residence sometime in 2012. The marriage took place on the same day as Mr. Ivie's last radiation treatment. Tom DeBaun, the Mayor of the City of Shelbyville, testified that he performed the 2014 marriage ceremony. He testified that he performs an average of fifty weddings per year and it is his practice to ask each participant their name, why he or she is there, to conduct the ceremony, and to sign the marriage certificate. Mayor DeBaun testified

he did not find Roger to be an unwilling participant and that he had denied weddings in the past. He testified that Roger spoke for himself and had no prompting for any answers.

One week prior to marrying Carolyn, on September 23, 2014, Mr. Ivie designated Carolyn as his Power for Attorney. On October 1, 2014, Roger Ivie listed Carolyn as the sole beneficiary of the Plan ("2014 Beneficiary Form"). Heather Brant, administrative assistant at the Lisher Law Office in Shelbyville, testified that Roger brought the insurance paperwork to the law office and explained he was doing a change of beneficiary to his wife. Brant testified that Carolyn may have been at the office, but was not in the room during the discussions between Attorney Lisher and Roger Ivie nor was she in the room when Roger signed the form. Brant testified that Mr. Lisher called for her via intercom and she witnessed Mr. Ivie sign the form. She testified that Roger had difficulty signing the form due to his arthritis, which caused him to turn the document at a forty-five degree angle and to hold his pen differently.

Carolyn Ivie testified that Roger made a call to attorney Lisher's law office to schedule the appointment, that she drove him to the appointment, but that she sat in the waiting room throughout the appointment with attorney Lisher.

Joseph Stieneker, who had known Roger since 1965 as a co-worker and friend, testified to Jack's condition in 2014. Specifically, Mr. Stieneker he had a two-hour conversation with Roger Ivie in late September 2014. While he noticed that Roger was down in weight, he testified that he otherwise would not have known anything was wrong with Roger and that he still maintained his laugh and upbeat demeanor that Roger had throughout their friendship.

Mr. Ivie's children from a previous marriage, Jeremie Ivie, Joseph Ivie, and Jessica Boger, testified that they did not recognize their father's signature on the September 23, 2014

Beneficiary Form because the handwriting was so poor.[1] They also testified that their father had severe arthritis and that his signature was difficult to read even before the cancer diagnosis.[2] They testified that their father had physically and mentally deteriorated as he went through cancer treatment for the last six months of his life.[3] Jessica Boger testified that Carolyn interfered with their relationship with their father, including disrupting the children's last Father's Day with their father, when she constantly text messaged Roger throughout the visit. Joe Ivie testified that his father had deteriorated mentally as evidenced by his forgetting how to drive, forgetting birthdays, and not remembering when he asked his children to come visit them.

Mr. Ivie died less than one week after the change in beneficiary was made, on October 7, 2014. The children testified that Freeman Family Funeral Home informed them they were not permitted to attend their father's funeral per the instructions of Carolyn Ivie.

After Mr. Ivie died, Jack attempted to claim the Plan Benefits. On October 15, 2014, MetLife informed Jack of the beneficiary change. The following day, on October 16, 2014, Carolyn claimed the Plan Benefits and requested MetLife to assign and release $7,156.05 of the Plan Benefits to Freeman Family Funeral Home. Also on October 16, 2014, MetLife received a letter from Jack contesting all claims filed in connection with the Plan Benefits, contending

---

[1] Carolyn Ivie has moved to strike the testimony of Jack Ivie. Given that Jack Ivie was not present at the bench trial, did not testify, and no previous testimony was offered via a deposition transcript, this motion is **DENIED as moot.** ([Docket No. 75](#)).

[2] Carolyn Ivie contends that all of Jack Ivie's witnesses', which were his three siblings, testimony should be disregarded for reason that each of his witnesses are incompetent witnesses as excluded by the "Dead Man Statute" [I.C. 34-45-2-4](#). However, Indiana's "Dead Man Statute" is only applicable to suits or proceedings "in which an executor or administrator is a party." [I.C. 34-45-2-4(a)(1)](#). Even if Carolyn Ivie was the executor or administrator of Roger Ivie's estate, which was a point never argued at trial, she was named in this lawsuit in her individual capacity and not as the executor or administrator of the estate. The purpose of the "Dead Man's Statute"—to prevent a particular class of witnesses from testifying as to claims against the estate—is absent in this case where there are no claims against the estate. *See [Kalwitz v. Estates of Kalwitz, 759 N.E.2d 228, 232 (Ind. Ct. App. 2001)](#).*

[3] In May 2014, Joseph Ivie recorded a conversation by and between Joseph, Roger Ivie, Jack Ivie, and Carolyn Ivie, and perhaps among others, at the Freeman Family Funeral Home. This recording was offered into evidence, and Carolyn Ivie objected to admission on the basis that the recording had not been provided to Carolyn Ivie despite her request for production of the same and that the recordings were not properly authenticated.

issues of undue influence. Carolyn Ivie testified that she made an assignment of the proceeds to Freeman Family Funeral Home to pay for both Roger Ivie's funeral expenses and the funeral expenses of her first husband.

## CONCLUSIONS OF LAW

The Plan in question specifically provided that Roger Ivie could change the beneficiary by submitting a written request on a form satisfactory to the Plan administrator. ([Docket No. 1-1](#)). Jack Ivie does not challenge the form submitted by Roger Ivie. His argument is based on his belief that Roger Ivie was unduly influenced in the execution of the document.

Undue influence is "the exercise of sufficient control over the person, the validity of whose act is brought into question, to destroy his free agency and constrain him to do what he would not have done if such control had not been exercised.'" *[Gast v. Hall](#)*, 858 N.E.2d 154, 165 (Ind. Ct. App. 2006) (quoting *[In re Estate of Wade](#)*, 768 N.E.2d 957, 962 (Ind. Ct. App. 2002), *trans. denied*). Undue influence is an "intangible thing that only in the rarest instances is susceptible of what may be termed direct or positive proof." *[Gast](#)*, 858 N.E.2d at 166. Accordingly, "undue influence may be proven by circumstantial evidence, and the only positive and direct proof required is of facts and circumstances from which undue influence reasonably may be inferred." *Id.*

At common law, Indiana recognized certain legal and domestic relationships, including an attorney-in-fact, that raise a presumption of trust or confidence as to the subordinate party on the one hand and a corresponding influence as to the dominant party on the other. *[Hamilton v. Hamilton](#)*, 858 N.E.2d 1032, 1036 (Ind. Ct. App. 2006), *reh'g denied, trans. denied*. Under the common law, when transactions occur between a dominant and subordinate party, which benefit the dominant party, the law imposes a presumption that the transaction was the result of undue

influence exerted by the dominant party, constructively fraudulent, and thus void. *Nichols v. Estate of Tyler*, 910 N.E.2d 221, 228 (Ind. Ct. App. 2009).

However, Indiana has recognized that the amended Indiana Code section 30-5-9-2, which provides in relevant part that "[a]n attorney in fact who acts with due care for the benefit of the principal is not liable or limited only because the attorney in fact: (1) also benefits from the act" abrogates the common law rule. *In re Estate of Compton*, 919 N.E.2d 1181, 1187 (Ind. App. Ct. 2010) ("A presumption of undue influence is now conditioned upon the attorney in fact's actual use of the power of attorney to effect the questioned transaction for his or her benefit. The benefiting attorney in fact is freed from the presumption of undue influence so long as the power of attorney is unused in the questioned transaction."); *see also In re Miller*, 935 N.E.2d 729, 741 (Ind. App. Ct. 2010) (citing *In re Estate of Compton*, 919 N.E.2d at 1187) ("This court has recently explained that a presumption of fraud or undue influence 'is now conditioned upon the attorney-in-fact's actual use of the power-of-attorney to effect the questioned transaction for his or her benefit.'").

The Court finds that Jack Ivie was not unduly influenced when he signed the 2014 Beneficiary Form that made Carolyn Ivie, his wife, the beneficiary of the life insurance policy in question. As established above, the fact that Carolyn Ivie was his attorney-in-fact at the time the 2014 Beneficiary Form was signed and the fact that Ms. Ivie benefited from the execution of the documents are not, by themselves, enough to establish a presumption of undue influence. No evidence was presented nor argument made that Ms. Ivie's status as Roger's power of attorney was used in the document's execution.

Of course, undue influence can also be established by the particular facts of the case showing an imposition of power by one party to deprive the other party of the exercise of free

7

will. However, the facts of this case do not establish that this occurred. The Court has considered testimony from witnesses, any preparation or documentation reflecting Roger Ivie's desires, and any evidence suggesting that Roger Ivie understood the consequences of his actions. The evidence shows that Roger Ivie made the appointment with James Lisher, his attorney who began assisting Roger in unrelated matters in 2013, on his own and that Carolyn Ivie only assisted in driving him to the appointment, where she remained in the waiting room for the entire appointment. Roger Ivie brought the necessary paperwork to the appointment and spoke privately with his attorney prior to the execution of the document. Mr. Lisher called his administrative assistant, Heather Brant, into his office to witness Roger Ivie signing the 2014 Beneficiary Form. Ms. Brant testified that Mr. Ivie had difficulty signing due to severe arthritis in his hand, but that the cancer had not affected his signature. Ms. Brant testified she had known Roger Ivie since February 2013, and found him to be an "upbeat gentleman" who was "always smiling." Ms. Brant testified that he was upbeat, despite his cancer, during the October 1, 2014, visit. Ms. Brant testified that Roger Ivie faxed in the change form. There was no evidence or testimony regarding the execution of the change form that would suggest Carolyn Ivie exercised control over Roger Ivie to the extent she inhibited his ability to act independently, causing him to do something he would not have otherwise done. Mr. Ivie's competency is further demonstrated by the testimony of Mayor DeBaun, who performed the September 30, 2014, marriage ceremony, and Joseph Stieneker, who spoke with Roger in late September 2014 and noticed that Roger was alert and in good spirits.

  The evidence shows that Roger Ivie intended to make Carolyn Ivie his beneficiary by signing the 2014 Beneficiary Form and understood the consequences of doing so. While Jack Ivie and his siblings, by testimony, repeatedly asserted their suspicion that Roger Ivie was

unduly influenced by Carolyn Ivie, no actual evidence, circumstantial or otherwise, was provided that this was the case. The Court acknowledges Caroyn Ivie's overdue account with Freeman Family Funeral home from costs associated with the passing of her first husband. However, without any evidence the Ms. Ivie exerted any force over Roger Ivie, this financial motive, by itself, is insufficient to allow a reasonable inference that undue influence occurred. Instead, the evidence indicates that Roger Ivie willingly married Carolyn Ivie and shortly thereafter made the independent decision to complete the 2014 Beneficiary Form. Importantly, Mr. Ivie's competency and freedom from any undue influence is supported by several independent sources, including Mayor DeBaun, Attorney James Lisher, and Heather Brant, who witnessed the execution of the 2014 Beneficiary Form.

With regards to the May 2014 audio tape recording of the discussions at the Freeman Family Funeral Home, to authenticate a tape in a criminal case the government must prove by clear and convincing evidence that the tape is a true, accurate, and authentic recording of the conversation, at a given time, between the parties involved. *Smith v. City of Chicago*, 242 F.3d 737, 741 (7th Cir. 2001). The Seventh Circuit has assumed, but not decided, that the proponent in a civil case for admission of a tape bears the same burden. *See id.* Clear and convincing evidence of the truth, accuracy, and authenticity of a tape may be shown in two ways. The proponent may show the tape's chain of custody. *See id.* If no proof as to chain of custody is rendered, the tape may be admissible if a foundation as to the "'accuracy and trustworthiness of the evidence is laid.'" *Id.* (citations omitted). "In this circuit, the recollections of eyewitnesses to the events in question are sufficient to establish a foundation for the admission of tapes." *Id.* at 742 (citations omitted).

Despite the fact that there are multiple voices in the recording, only Joseph testified as when and where the recording occurred. Moreover, not all of the voices within the recording were identified at trial. Thus, the Court has serious doubts as to whether authentication of the recording was sufficient to support admissibility. However, the Court does not decide that issue today. Even if the Court were to assume the recordings were admissible, it would not impact this Court's findings. The recording includes a statement by, the Court presumes, Roger Ivie, in which he states that he has an insurance policy where at least one of his children, if not all of them, are listed as the beneficiaries of an insurance policy. Not only is the specific insurance policy not identified in the recording, but even if we assume it was the policy in question, Mr. Ivie's May 2014 statement does not convince this Court he was unable to, independently, decide to change his beneficiary five months later in October 2014.

The Court finds that Roger Ivie was competent when he signed the 2014 Beneficiary Form and that Jack Ivie did not meet his burden of establishing that Roger Ivie was acting under undue influence when he did so. Carolyn Ivie is entitled to the Plan Benefits.

## CONCLUSION

For the foregoing reasons, the Court finds that Carolyn Ivie is entitled to the Plan Benefits. The Court **ORDERS** the Clerk to remit to Ms. Ivie the remaining $4,704.05, paid into the Court Registry by MetLife, together with any interest that has accrued while the funds were in the Clerk's custody. Final judgment will enter accordingly.

**SO ORDERED.**

Dated: 2/13/2018

Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.